UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERISSE MICHELLE PERRY, | No. 2:15-cv-2482-CKD |
| Plaintiff, | |
| v. | ORDER |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying applications for Disability Income Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"), respectively. For the reasons discussed below, the court will deny plaintiff's motion for summary judgment and grant the Commissioner's cross-motion for summary judgment.

I.  BACKGROUND

Plaintiff, born December 31, 1977, applied on November 21, 2011 for DIB and SSI, alleging disability beginning July 1, 2008. Administrative Transcript ("AT") 154-55, 259-79. Plaintiff alleged she was unable to work due to bipolar disorder, anxiety, depression, sciatica, paranoia, insomnia, and panic attacks. AT 357. In a decision dated March 11, 2014, the ALJ

////

1

determined that plaintiff was not disabled.[1] AT 12-21. The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.
>
> 2. There is no evidence of substantial gainful activity since July 1, 2008, the alleged onset date.
>
> 3. The claimant has the following severe impairments: degenerative disc disease, left knee strain, obesity, and bipolar disorder.
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 *et seq.* Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 *et seq.* Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a), 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920, 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142 (1987). The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
>
> Step two:  Does the claimant have a "severe" impairment? If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
>
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

> 5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined on a function-by-function basis in 20 CFR 404.1567(b) and 416.967(b).  However, she needs allowance to alternate between sitting and standing for 5 minutes every 30 minutes, and cannot climb ladders, ropes or scaffolds; she can occasionally perform all other postural functions.  Finally, she is limited to simple repetitive tasks with no public contact.
>
> 6. The claimant is unable to perform any past relevant work.
>
> 7. The claimant was born on December 31, 1977 and was 30 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.
>
> 8. The claimant has at least a high school education and is able to communicate in English.
>
> 9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferrable job skills.
>
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from July 1, 2008, through the date of this decision.

AT 14-21.

II.   ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled:  (1) improperly considered and weighed the opinions of Dr. Harris and Dr. Matan when determining plaintiff's residual functional capacity ("RFC"); (2) improperly found plaintiff's testimony regarding the extent of her limitations and pain less than fully credible; (3) improperly discounted the third party statement of plaintiff's sister; (4) propounded hypothetical questions to the vocational expert ("VE") that failed to describe all of plaintiff's limitations; and (5) failed to base his overall decision that plaintiff was not disabled on substantial evidence.

/////

/////

/////

3

III.     LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

IV.     ANALYSIS

A.   *The ALJ did not Erroneously Weigh the Opinions of Dr. Harris and Dr. Matan*

First, plaintiff argues that the ALJ erred in his consideration and weighing of the medical opinions provided by Dr. Harris, plaintiff's treating psychiatrist who opined on the extent of plaintiff's mental limitations, and Dr. Matan, plaintiff's treating orthopedic physician who opined on the extent of plaintiff's physical limitations.

/////

4

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record, and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons that are supported by substantial evidence. Id. at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). In any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

### 1. Dr. Harris

Dr. Harris, plaintiff's treating psychiatrist, provided a medical source statement regarding the extent of plaintiff's limitations stemming from her mental impairments on October 24, 2013. AT 878-82. In that statement, Dr. Harris diagnosed plaintiff with bipolar disorder and determined that she had a Global Assessment of Functioning ("GAF") score between 55-60, indicating moderate-to-marked mental impairment. AT 878. Based on his assessment, Dr. Harris opined that plaintiff has "moderate" limitations, meaning plaintiff would be off task 20 percent of the time, with regard to the following areas of mental functioning: the ability to remember locations and work-like procedures; the ability to understand, remember, and carry out very short and simple instructions; the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; the ability to maintain socially appropriate behavior and to adhere to basis standards of neatness and cleanliness; ability to respond appropriately to changes in the work setting; the ability to be aware of normal hazards

and take appropriate precautions; and the ability to travel in unfamiliar places or use public transportation. AT 879-81. Dr. Harris opined further that plaintiff has "marked" limitations, meaning she would be off task 30 to 50 percent of the time, in the following areas of mental functioning; the ability to understand, remember, and carry out detailed instructions; the ability to maintain attention and concentration for extended periods; the ability to complete a normal work-day and work-week, without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; the ability to interact appropriately with the general public; the ability to accept instructions and respond appropriately to criticism from supervisors; the ability to set realistic goals or make plans independently of others; and the ability to tolerate normal levels of stress. Id. Dr. Harris also opined that plaintiff has moderate-to-marked limitations in the following areas of mental functioning: the ability to sustain an ordinary routine without special supervision; the ability to work in coordination with or proximity to others without being distracted by them; the ability to make simple work-related decisions; the ability to ask simple questions or request assistance; and the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. AT 880-81. Finally, Dr. Harris opined that plaintiff's mental impairments would cause her to miss more than 4 days of work per month. AT 881.

The ALJ provided the following rationale in support of his decision to reject Dr. Harris's opinion:

> I find no basis for Dr. Harris' extremely restrictive and unsubstantiated conclusion of total mental debilitation. As previously noted, the claimant has been taking college courses since 2011, getting generally good grades. During the first 2 years, she did not feel the need to enroll in the disabled student's program at the College. Her ability to continue in her education, albeit with some possible mental limitations, is inconsistent with Dr. Harris' findings of marked limitations in multiple categories of mental functioning. Finally, the claimant has received only minimal mental health treatment; although services evidently were available to her, she participated in treatment only sparingly.

AT 19. These were specific and legitimate reasons for discounting Dr. Harris's opinion

supported by substantial evidence in the record.[2]

First, the ALJ reasonably determined that the evidence showing that plaintiff was able to attend college full time since 2011 without any accommodations for her mental impairments until the Fall 2013 semester and with a generally good grade point average conflicted with the marked mental limitations Dr. Harris opined. Indeed, plaintiff's testimony at the hearing and the other evidence in the record regarding her schooling show that she had been taking general education classes at Contra Costa College every semester since the Fall 2011 semester, starting off with a full time class load of four classes, and dropping one or more classes during some semesters, which resulted in generally good grades, with some exceptions. AT 43-44, 393-96. The evidence in the record also shows that plaintiff received special accommodations at school for her mental impairments in the form of a note taker, tape recorded lectures, and additional time during tests, but that she had sought out and received that assistance only starting in September 2013, roughly 2 years after she began attending classes, and roughly 6 months before the conclusion of the relevant period. AT 44-45, 393. Furthermore, as the ALJ noted, the medical verification form plaintiff submitted on November 15, 2012 for purposes of obtaining accommodations at Contra Costa College, certifies only that plaintiff had purely physical impairments, such as knee pain and sciatica; nothing in the evidence indicates that plaintiff's mental impairments warranted the

---

[2] Plaintiff argues that the court should apply the "clear and convincing" reasons standard in reviewing the ALJ's consideration of Dr. Harris's opinion because the only other medical opinion in the record that directly conflicts with Dr. Harris's opinion is provided by a non-examining psychologist, Dr. Schumacher. However, plaintiff provides no authority to support her position that the court must apply the "clear and convincing reasons" standard where a treating physician's opinion conflicts with the opinion of a non-examining physician's opinion. Contrary to plaintiff's position, the Ninth Circuit Court of Appeals has long held that an ALJ may reject a treating or examining physician's opinion for "specific and legitimate reasons" when that opinion is contradicted by the opinion of another physician. See, e.g., Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995) (citing Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995) ("[L]ike the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record."). This longstanding principle does not differentiate between whether the conflicting opinion was provided by another treating, examining, or non-examining physician. See id. Accordingly, the court applies the "specific and legitimate reasons" standard to assess the ALJ's consideration of Dr. Harris's opinion, rather than the more stringent standard plaintiff suggests should be applied.

school accommodations plaintiff received until she actually received them in September of 2013. AT 397.

This evidence reasonably suggests that plaintiff's mental impairments did not render her markedly limited with regard to her abilities to understand, remember, and carry out detailed instructions, maintain attention and concentration for extended periods, complete a normal work-day and work-week without interruptions, and tolerate normal levels of stress; it indicates that plaintiff was able to attend college full time, receive generally good grades while she was there, and did not need accommodations for her mental impairments for at least the first two years of that schooling. Accordingly, the ALJ reasonably determined that this evidence undermined Dr. Harris's opinion that plaintiff's mental impairments caused "marked" limitations with regard to those areas of functioning. See Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (ALJ properly discounted physician's opinion that the plaintiff's "difficulty paying attention, concentrating, and organizing herself without getting overwhelmed" affected her ability to work based on the fact that that symptom did not prevent the plaintiff from "completing high school, obtaining a college degree, finishing a Certified Nurses' Aide training program, and participating in military training").

Plaintiff argues that the ALJ's determination that the evidence shows that plaintiff's mental impairments only seriously impacted her schooling once she began receiving accommodations in late 2013 was an unreasonable interpretation of the evidence because the record also contains a letter from the Dean of Students at Contra Costa College, which suggests that plaintiff had longstanding mental problems. However, this letter is dated January 24, 2014—after plaintiff began receiving accommodations, and only a couple months before the ALJ issued his decision—and states only that plaintiff had been a student at the College since 2011, the Dean of Students had become acquainted with plaintiff at some unspecified time after she enrolled, and plaintiff was now taking advantage of accommodations due to her mental impairments. AT 394. This letter does not specifically show that plaintiff received accommodations for her mental impairments prior to September of 2013, or that those impairments were so severe as to require accommodations prior to that time. Accordingly, plaintiff's argument that the ALJ unreasonably

interpreted her school records is without merit.

In addition to finding that the evidence in the record related to plaintiff's college coursework conflicted with Dr. Harris's opinion, the ALJ also correctly determined that plaintiff's limited efforts to seek treatment for her mental impairments conflicted with the marked mental limitations Dr. Harris opined. Indeed, Dr. Harris himself specifically acknowledged that plaintiff attended treatment "sparingly" and appeared motivated to attend only for the purpose of having her physicians fill out disability benefit forms. AT 903. The fact that plaintiff was not motivated to consistently seek out or attend treatment is "powerful evidence regarding the extent [of her symptoms]." Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005). Accordingly, the ALJ also properly cited to plaintiff's minimal participation in treatment for her mental impairments in support of his determination that Dr. Harris's opinion that plaintiff's mental impairments caused marked limitations was entitled to reduced weight.

### 2. Dr. Matan

Dr. Matan, plaintiff's treating orthopedist, provided a medical source statement regarding the extent of plaintiff's limitations stemming from her physical impairments, specifically her back and knee problems, on September 14, 2013. AT 875-77. In that statement, Dr. Matan opined that plaintiff's physical impairments rendered her able to lift and/or carry up to 20 pounds "occasionally," meaning "from very little up to 1/3 of an 8-hour day." AT 875. Dr. Matan opined further that plaintiff could stand and/or walk for up to 2 hours total during an 8-hour day, and could stand for no more than 30 minutes at a time without interruption. Id. Dr. Matan also opined that plaintiff's ability to sit was not affected by her physical impairments, and that she could sit for the entirety of an 8-hour day. AT 876. Finally, Dr. Matan opined that plaintiff could "occasionally" balance, stoop, crouch, kneel, and crawl, but could "never" climb. Id. In all other respects, Dr. Matan found that plaintiff's physical impairments did not cause additional limitations. AT 875-77.

The ALJ found "Dr. Matan's opinion limiting [plaintiff] to essentially sedentary work not substantiated by the objective medical evidence of record" and determined that "[t]he various x-rays and MRI of [plaintiff's] knees and back indicate fairly benign findings and do not support

the extent of limitation Dr. Matan suggests." Id. This was a specific and legitimate reason for discounting Dr. Matan's opinion supported by substantial evidence in the record.

As the ALJ noted, the x-ray and MRI evidence in the record regarding plaintiff's knee and back impairments show that those physical impairments were, at most, minimal in nature. AT 687 (September 2012 results for x-ray of plaintiff's left knee showing no fracture, dislocation, or other abnormalities), 873-74 (September 2013 MRI of plaintiff's back revealing mild spinal canal stenosis at the L4-5 vertebrae, and other mild findings), 994-95 (August 2013 results for x-ray of plaintiff's lower back showing only "minimal degenerative change in the facet joints of the lower lumbar spine"), 1030 (October 2012 MRI of plaintiff's left knee showing Grade I-MCL sprain, without evidence of tear, and Hoffa's fat pad impingement). The ALJ reasonably determined that such objective medical findings did not support Dr. Matan's opinion that plaintiff has physical limitations that permitted plaintiff to engage only in sedentary work, such as an ability to stand and/or walk for only up to 2 hours total in an 8-hour day. Similarly, other objective medical findings in the record support the ALJ's assessment that certain aspects of Dr. Matan's opinion were too extreme. See, e.g., AT 475-76, 556, 608, 918, 1047, 1052, 1057.

Furthermore, the more extreme aspects of Dr. Matan's opinion were at odds with the findings and opinion of Dr. Pon, an examining physician who conducted an independent physical examination of plaintiff, to which the ALJ accorded "great weight." AT 19. Indeed, Dr. Pon's examination notes show that plaintiff exhibited no problems with ambulation, had a normal gait, had full range of motion, flexion, and extension in both knees, and produced negative results bilaterally for her strait leg raising tests. AT 620-21. Based on those examination findings, Dr. Pon opined that plaintiff had physical limitations that were less severe than those opined by Dr. Matan. In particular, Dr. Pon opined that plaintiff could stand and/or walk for a total of 6 hours in an 8-hour workday, in contrast to Dr. Matan's opinion that plaintiff could do the same for only a total of 2 hours during the same period of time. AT 621, 875. Dr. Pon's opinion, standing alone, was substantial evidence to support the ALJ's determination that Dr. Matan's opinion was entitled to reduced weight. Andrews, 53 F.3d at 1041.

/////

Plaintiff argues that the ALJ could not have properly relied on Dr. Pon's opinion over the opinion of Dr. Matan because the record shows that Dr. Pon issued his opinion prior to plaintiff suffering a knee injury that Dr. Matan's later opinion took into account. However, the objective evidence developed after Dr. Pon's February 13, 2012 examination, and after plaintiff incurred her knee injury, in particular the x-ray and MRI results developed between September 2012 and September 2013, provide a reasonable basis for the ALJ to conclude that Dr. Pon's opinion better captured plaintiff's actual limitations over the course of the relevant period, even when plaintiff's subsequent knee injury is taken into account. Therefore, the court finds plaintiff's argument to be without merit.

  B. *The ALJ did not err in Rendering his Adverse Credibility Determination with Regard to Plaintiff's Testimony*

Second, plaintiff argues that the ALJ erred in finding plaintiff's pain and symptom testimony less than fully credible.

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for the disbelief").

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. See id. at 345-47. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally SSR 96-7p; SSR 95-5p; SSR 88-13. Work records,

1   physician and third party testimony about nature, severity and effect of symptoms, and
2   inconsistencies between testimony and conduct also may be relevant. Light v. Social Security
3   Administration, 119 F.3d 789, 792 (9th Cir. 1997).  A failure to seek treatment for an allegedly
4   debilitating medical problem may be a valid consideration by the ALJ in determining whether the
5   alleged associated pain is not a significant non-exertional impairment. See Flaten v. Secretary of
6   HHS, 44 F.3d 1453, 1464 (9th Cir. 1995).  The ALJ may rely, in part, on his or her own
7   observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot
8   substitute for medical diagnosis. Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990).
9   "Without affirmative evidence showing that the claimant is malingering, the Commissioner's
10  reasons for rejecting the claimant's testimony must be clear and convincing." Morgan v.
11  Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).
12       Here, the ALJ found plaintiff's testimony regarding the intensity, persistence, and limiting
13  effects of the symptoms stemming from her impairments to be not entirely credible based on the
14  following rationale:

> [S]he remains capable of taking multiple college classes since 2011,
> obtaining generally good grades in the process.  In addition, I find it
> curious that she enrolled in the disabled students' program at the
> College only in 2013, 2 years after she began taking classes, and a
> mere 6 months before her scheduled hearing before me.  More
> oddly . . . the disabled student "medical verification" cites only to
> physical, not mental, impairments.

20   AT 19.  This rationale constituted a clear and convincing reason for discounting plaintiff's
21  testimony regarding the extent of her symptoms, which was supported by substantial evidence in
22  the record.
23       Plaintiff testified that she could no longer work because she was unable to focus and
24  remember things, was too scared to leave the house due to her mental impairments, and could not
25  handle stress.  AT 31, 340-42.  As discussed above with regard to Dr. Harris's opinion, plaintiff's
26  school records support the ALJ's finding that plaintiff's mental impairments were not so severe as
27  to cause marked impairments with regard to her ability to understand, remember, and carry out
28

detailed instructions, maintain attention and concentration for extended periods, complete a normal work-day and work-week without interruptions, and tolerate normal levels of stress. On a similar basis, those records also conflict with plaintiff's allegations that she cannot work due to memory problems, an inability to maintain attention and concentration and handle stress, and a fear of leaving the house. Indeed, plaintiff's school records shows that plaintiff attended college full time between the Fall 2011 semester and the Fall 2013 semester without any accommodations for her mental impairments, and managed to obtain generally good grades during that time. AT 393-99. The ALJ was permitted to rely on this fact as substantial evidence to support his finding that plaintiff's testimony alleging that her mental impairments rendered her unable to work was not credible. See Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993) (finding ALJ's adverse credibility determination to be supported by substantial evidence based on the ALJ's reasoning that the claimant's attendance at school three days a week was inconsistent with the claimant's alleged inability to perform all work). Accordingly, the ALJ did not err in his credibility assessment of plaintiff's testimony.

    C. *The ALJ's Error in Failing to Weigh the Third Party Statement of Plaintiff's Sister was Harmless*

Third, plaintiff argues that the ALJ improperly discounted the lay witness testimony of her sister without providing germane reasons for doing so that were specific to that witness. "[L]ay witness testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence, and therefore cannot be disregarded without comment." Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996); see also Dodrill v. Shalala, 12 F.3d 915, 918-19 (9th Cir. 1993) (friends and family members in a position to observe a plaintiff's symptoms and daily activities are competent to testify to condition). "If the ALJ wishes to discount the testimony of the lay witnesses, he must give reasons that are germane to each witness." Dodrill, 12 F.3d at 919. Nevertheless, the ALJ is not required "to discuss every witness's testimony on a[n] individualized, witness-by-witness basis." Molina, 674 F.3d at 1114. Indeed, while the applicable regulations require "the ALJ to consider testimony from family and friends submitted on behalf of the claimant," they "do not require the ALJ to provide express reasons for rejecting

testimony from each lay witness." Id. (citing 20 C.F.R. §§ 404.1529(c)(3), 404.1545(a)(3)). "Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." Molina, 674 at 1114.

When the ALJ provides clear and convincing reasons for discounting a claimant's testimony and the third-party lay witness's testimony is similar to the claimant's testimony, the ALJ's reasons for discounting the claimant's testimony may also constitute germane reasons for rejecting the third-party lay witness's testimony. Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009); see also Molina, 674 at 1114. Furthermore, even when the ALJ errs by failing to explain his or her reasons for disregarding a layperson's testimony, such error is harmless if that layperson's testimony largely reflects the limitations described by the claimant and the ALJ provides clear and convincing reasons for discounting the claimant's testimony, because the layperson's testimony in such a circumstance is "inconsequential to the ultimate nondisability determination in the context of the record as a whole." Molina, 674 F.3d at 1122 (quotation marks omitted).

Here, the ALJ summarized the third-party statement provided by plaintiff's sister and the testimony she gave at the hearing in detail, clearly indicating that he considered that evidence. AT 17. Moreover, plaintiff's sister's report and testimony essentially echoed plaintiff's own testimony and, as discussed above, the ALJ already provided specific, clear, and convincing reasons for discounting plaintiff's testimony, which are equally germane to this third-party testimony. As such, any error in not explicitly restating or incorporating by reference the reasons given for discounting plaintiff's testimony with respect to this third-party statement was harmless and remand is not warranted. See Molina, 674 F.3d at 1115-22.

D. *The ALJ's Hypotheticals to the VE were not Erroneous*

Fourth, plaintiff argues that the ALJ erred in rendering his step-five determination based on the testimony provided by the VE because the ALJ's hypotheticals based on his RFC determination failed to fully encompass all of plaintiff's limitations supported by the evidence in the record, therefore meaning that the VE's testimony did not constitute substantial evidence.

Specifically, plaintiff contends that the ALJ's hypotheticals based on his RFC determination failed to incorporate limitations relating to plaintiff's ability to relate to coworkers and supervisors and regularly attend work based on the emotional dysfunction observed by Dr. Harris. However, as discussed above, the ALJ properly discounted Dr. Harris's opinion and based the limitations contained in his RFC determination on substantial evidence from the record. See Greger v. Barnhart, 464 F.3d 968, 973 (9th Cir. 2006) (quoting Osenbrock v. Apfel, 240 F.3d 1157, 1164-65 (9th Cir. 2001)) ("The ALJ . . . 'is free to accept or reject restrictions in a hypothetical question that are not supported by substantial evidence.'"). Accordingly, plaintiff's argument is without merit.

The ALJ posed hypotheticals to the VE that incorporated all of the limitations included in the ALJ's RFC determination, to which the VE responded that there existed several jobs within the national economy that plaintiff could perform. AT 54-57. The ALJ properly relied on this testimony to support his step five determination that there existed jobs in significant numbers within the national economy that plaintiff could perform given her RFC. See Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009). Therefore, the ALJ's step five determination that plaintiff was not disabled within the meaning of the Act was proper and supported by substantial evidence.

E. *The ALJ's Overall Non-Disability Determination was Supported by Substantial Evidence*

Finally, plaintiff contends that the ALJ's overall decision finding plaintiff not disabled within the meaning of the Act was not supported by substantial evidence. Plaintiff argues that this decision was not based on substantial evidence because the ALJ's RFC determination was erroneous for the reasons asserted above with regard to the ALJ's consideration of the medical and lay opinion evidence and plaintiff's testimony. Plaintiff asserts further that the ALJ erred in relying on the VE's testimony because that testimony was based on hypotheticals posed by the ALJ that did not include all of plaintiff's limitations.

/////

/////

In general, plaintiff's arguments regarding this issue are little more than a restatement of her other contentions the court has already addressed and found to be without merit for the reasons stated above. However, plaintiff also advances the new argument that the ALJ erroneously assigned "great weight" to the opinion of Dr. Schumacher, a non-examining psychologist, over the opinion of Dr. Harris. Plaintiff argues that Dr. Schumacher's status as a non-examining physician means that his opinion cannot, as a matter of law, constitute substantial evidence to support the ALJ's decision to reject the treating opinion of Dr. Harris. Plaintiff is correct in noting that "'[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician.'" Hill v. Astrue, 698 F.3d 1153, 1160 (9th Cir. 2012) (quoting Lester v. Chater, 81 F.3d 821, 831 (9th Cir. 1996)). However, the ALJ did not rely on Dr. Schumacher's opinion to discount Dr. Harris's opinion. As discussed above, the ALJ discounted Dr. Harris's opinion because the evidence in the record regarding plaintiff's attendance at Contra Costa College and the fact that plaintiff sought out only minimal treatment for her mental impairments conflicted with the restrictive mental limitations contained in that opinion. AT 19. These were specific and legitimate reasons for discounting Dr. Harris's opinion supported by substantial evidence independent of Dr. Schumacher's opinion. Accordingly, plaintiff's argument is without merit.

V.   CONCLUSION

For the reasons stated herein, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 10) is denied;

2. The Commissioner's cross-motion for summary judgment (ECF No. 15) is granted; and

3. Judgment is entered for the Commissioner.

Dated:  February 13, 2017

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

11 perry2482.ss

16